

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

March 15, 1974

The Honorable Mark W. White, Jr.
Secretary of State
State of Texas
Austin, Texas 78711

Opinion No. H- 259

Re: Responsibilities of
candidates for
federal office under
the Campaign Report-
ing and Disclosure
Act of 1973

Dear Mr. White:

The Campaign Reporting and Disclosure Act of 1973 (Acts 1973, ch. 423, p. 1101, generally found in Chapter 14, Texas Election Code), regulates campaign contributions and expenditures. Among the persons covered by the Act are candidates for certain federal offices. These candidates also must conform to the requirements of the Federal Election Campaign Act of 1971 (P. L. 92-225, 86 Stat. 3). See also 11 C. F. R. § 1.1 et seq. A candidate's concurrent responsibility under the state and federal laws is defined in § 403 (2 U.S.C. § 453) of the federal act. That section provides:

> "Sec. 403. (a) Nothing in this Act shall be deemed to invalidate or make inapplicable any provision of any State law, except where compliance with such provision of law would result in a violation of a provision of this Act.
>
> "(b) Notwithstanding subsection (a), no provision of State law shall be construed to prohibit any person from taking any action authorized by this Act or from making any expenditure (as such term is defined in section 301(f) of this Act) which he could lawfully make under this Act. "

In addition, § 308(b)[2U.S.C. § 438(b)] and § 309 [2U.S.C. § 439] of the federal act contemplate cooperation between state and federal officials in administering the system of reports on campaign contributions and expenditures.

In light of these provisions of the federal act you ask our opinion as to 'what portions of [the state act] are applicable to federal candidates and what portions of [the state act] have been preempted by the Federal Election Campaigns Act."

Section 403 was offered as an amendment by Representative Udall during consideration of the bill by the House of Representatives acting as the committee of the whole. In explaining the amendment to the House, he said:

> "MR. UDALL, Mr. Chairman, I have offered this amendment at the request of several of my colleagues. It deals with the conflict between the new Federal law we are going to have and the 50 State laws. Some of the State laws are very ancient and have unrealistic and unworkable spending limitations and all the rest.
>
> "This amendment comes in two parts.
>
> "The first deals with the dilemma one might have, where, by complying with the reporting provision in the Federal law one would violate the State law, or, by complying with the State law, would violate the Federal law.
>
> " . . . .
>
> "[Paragraph (a)] simply says that one does not violate a State law when one complies with this Federal law.

> "The second half of the amendment (Paragraph
> b) deals in a more affirmative fashion with this conflict
> of State and Federal law problem.
>
> ". . . .
>
> "Let me give you an example.  One member
> here tells me in his State there is a very rigid
> provision which limits him to about $5,000.  The
> new Act will have a $50,000 limitation in it.  All
> this amendment says is you can spend up to the
> amount authorized by the Federal Act without
> regard to a lot of old, obsolete State Acts.  I do
> not know of any controversy." 117 Cong. Rec. 4339b
> (1971).

When the conference report was before the House, Representative
Hays,  the House sponsor of the legislation, was questioned on the effect
of § 403.   The colloquy was:

> "MR. BINGHAM. . . . I would like to
> ask the chairman of the Committee on House
> Administration a question about the interpretation
> of section 403 which deals with the effect of this
> legislation on State laws.  As I understand it,
> section 403 (b) would vitiate any State laws which
> impose either spending ceilings or lower ceilings
> on the amount that a candidate or his family might
> spend for a campaign.  Is that correct?
>
> "MR. HAYES.  My opinion is that the gen-
> tleman is correct in his interpretation. Subsection
> (b) of section 403 refers to a whole list of purposes
> in section 301 (f) for which expenditures may be
> lawfully made.  Obviously, contradictory State
> laws are superseded. Similarly limitations on
> contributions lower than those in this bill forcibly

> vitiate the intent of this bill and therefore, in my
> opinion, they are not valid." 118 Cong. Rec.
> H85 (daily ed. Jan. 19, 1972).

We believe that the two paragraphs of § 403 must be construed together. Although paragraph (b) expressly controls over paragraph (a), we do not think paragraph (a) is rendered meaningless. Therefore, it is our opinion that the reference in paragraph (b) to "action authorized by this Act" refers to actions authorized expressly and affirmatively. The failure to prohibit an act is not an "authorization" of it. For example, even though the federal act does not require reports of contributions not exceeding one hundred dollars, we do not believe a candidate can successfully claim that the federal act expressly authorizes, under § 403 (b) a failure to report contributions of one hundred dollars or less if a state law requires such a report. Thus, the more stringent reporting requirement of section 9 [Vernon's Texas Election Code, Article 14. 08(c)] of the state act would apply to federal candidates. On the other hand, as stated to the House by the author of § 403 and by the sponsor of the bill, provisions of the federal act permitting expenditures of a certain kind or amount would supersede contrary state requirements.

Section 403 is directed to actions authorized to be taken by "any person", and is not limited to candidates.

The state law is generally applicable to those federal candidates, contributors and committees covered by it, except where there is a specific conflict with the federal law. The only potential conflict we have found is between § 8 [Vernon's Texas Election Code, Article 14. 07] of the state act and section 205 [18 U. S. C. § 610] of the federal act.

Section 8 of the state act provides in part:

> "(a) Except to the extent permitted in [Vernon's
> Texas Election Code, Article 15. 17] no corporation
> shall give, lend or pay any money or other thing of
> value, or promise to give, lend or pay any money

or other thing of value, directly or indirectly, to any candidate, political committee, campaign manager, assistant campaign manager, or any other person, for the purpose of aiding or defeating the nomination or election of any candidate or of aiding or defeating the approval of any political measure submitted to a vote of the people of this state or any subdivision thereof; . . . ."

Section 205 of the federal act provides:

"Sec. 205. Section 610 of title 18, United States Code, relating to contributions or expenditures by national banks, corporations, or labor organizations., is amended by adding at the end thereof the following paragraph:

"As used in this section, the phrase 'contribution or expenditure' shall include any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, or any services, or anything of value (except a loan of money by a national or State bank made in accordance with the applicable banking laws and regulations and in the ordinary course of business) to any candidate, campaign committee, or political party or organization, in connection with any election to any of the offices referred to in this section; but shall not include communications by a corporation to its stockholders and their families or by a labor organization to its members and their families on any subject; nonpartisan registration and get-out-the-vote campaigns by a corporation aimed at its stockholders and their families, or by a labor organization aimed at its members and their families; the establishment, administration, and solicitation of contributions to a separate segregated

> fund to be utilized for political purposes by a corp-
> oration or labor organization: Provided, that it
> shall be unlawful for such a fund to make a contribution
> or expenditure by utilizing money or anything of value
> secured by physical force, job discrimination, financial
> reprisals, or the threat of force, job discrimination,
> or financial reprisal; or by dues, fees, or other monies
> required as a condition of membership in a labor
> organization or as a condition of employment, or
> by moneys obtained in any commercial transaction. "

We know of no judicial construction of the state's prohibition of direct or indirect contributions by a corporation. You have not asked us to construe this provision, and it is not necessary for us to do so. However, if the state act is interpreted to prohibit the types of activity permitted by section 205 of the federal act, the federal act would prevail in regard to candidates for federal office.

## SUMMARY

Candidates for those federal offices included in the coverage of the Campaign Reporting and Disclosure Act of 1973, (Acts 1973 63 Leg. ch. 423, p. 1101), committees working on behalf of those candidates and contributors to those candidates or committees must comply with the provisions of state election laws except where federal laws are in conflict as defined at 2 U. S. C. § 453.

If the state prohibition on direct or indirect corporate contributions is construed to prohibit contributions to federal candidates from the type of fund contemplated by 18 U. S. C. § 610, the federal law will prevail.

Yours very truly,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee